

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 19, 2018**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ANITA MADRID GONZALES, | § § § | CASE NO. 17-50150-rlj13 |
| Debtor. | § § | |

## MEMORANDUM OPINION AND ORDER

On October 19, 2017, the Court held the confirmation hearing on the chapter 13 plan of Anita Gonzales, the debtor. Abraham Mathews, a secured (and unsecured) creditor, and Robert Wilson, the standing chapter 13 trustee, objected to Gonzales's plan and opposed confirmation.[1]

The Court concludes that Gonzales's plan is not feasible and denies confirmation.

### I.

Gonzales's plan requires that she make plan payments of $740.00 per month for a period of sixty months. Mathews, the mortgagee under the plan, has a prepetition arrearage claim of

---

[1] The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

$7,262.28 that will be paid $5.00 per month for months 2 through 16 and $165.00 per month for months 17 through 60; he also has a post-petition mortgage arrearage claim of $972.64 that will be paid $243.16 per month for months 54 through 57. The two arrearage claims do not accrue interest. In addition, Mathews is paid the regular mortgage payment of $486.32 per month for 59 months; as required on cases in the Northern District, these payments are "conduit" payments, i.e., they are made by the chapter 13 trustee from Gonzales's required plan payments. The regular mortgage payments are, presumably, based on an amortized payment schedule that includes the payment of principal and interest on the mortgage debt.

According to Gonzales's plan, she makes "direct" payments to Bank of America on a claim of $42,000. (Bank of America had objected to the plan, but such objection was resolved prior to the confirmation hearing.)

The plan lists total unsecured claims of $9,373.35 that will be paid, as estimated, 9% of each claim.

## A.

The mortgaged property as referenced by the plan is a house located at 2222 3rd Street, Lubbock, Texas. Gonzales purchased the house from Mathews in 2006; she has lived in that house for the majority of the time since its purchase to the present. Apparently after failing to make payments on the mortgage, Gonzales was evicted and the house was foreclosed. Gonzales did not live in the house from March 2017 to July 2017. Mathews, according to his written objection to the plan, sold the house to a third party that spent approximately $34,000 repairing and making improvements to the house. According to the pleadings, Mathews discovered that the property description on the house in the deed of trust was wrong and the foreclosure and sale to third party purchasers was, in effect, undone. Gonzales therefore moved

back in to the house and filed this bankruptcy to attempt to save the house.

## B.

By his objection, Mathews argues that Gonzales's plan is not feasible as she does not have sufficient income to make plan payments. He also contends that, if approved, the plan unjustly enriches Gonzales at Mathews's expense—she gets a house that, given the work done after the foreclosure, is worth considerably more than she should receive.

The trustee likewise says the plan is not feasible. He also argues that the plan is not filed in good faith—he points out that he is unable to determine if Gonzales is dedicating all net disposable income to the plan as she has not provided adequate information to the trustee.

## II.

## A.

Gonzales's plan is not feasible. She failed to prove by a preponderance of the evidence that she has sufficient and regular income to make the needed plan payments. Gonzales's income is derived from Social Security Disability of $1,100 per month and rent of $600 per month (for rental of a room and bathroom for $400 per month, plus an additional $200 per month for the renter's two dogs). Gonzales also claims additional income from odd jobs that she does for her sister that include, she says, lawn service, fence repairs, and painting.

Gonzales testified that she receives Social Security Disability Income because she has arthritis and suffers from depression. She hopes to receive an increase in the disability payments and also submits that her sister will help with payments, if needed.

The plan is not ready for confirmation. Gonzales does not dispute that the payments will need to be increased in light of her obligations under the plan. Gonzales was uncertain about her expenses—utility bills, taxes, and insurance—and she did not have a firm grasp of what her

obligations will be under the plan or how she will be able to make the payments.

### B.

Concluding that Gonzales's plan is not feasible resolves whether her plan can be confirmed. But the Court will also address the trustee's argument that Gonzales's plan was not filed in good faith. The Court assumes a different or amended plan will be presented, which will have to satisfy the good faith requirement.

Section 1325 provides the requirements for confirmation. Both *the petition* initiating the case and *the plan* must be filed in good faith. 11 U.S.C. § 1325(a)(3), (a)(7). The trustee's objection specifically questions Gonzales's good faith in presenting her chapter 13 plan.

Section 1325(a)(3) states that a plan must be "proposed in good faith and not by any means forbidden by law." For its lack of definition in the Code, the requirement that the plan be proposed in good faith is the subject of much litigation whereby most courts seek to utilize their discretion to prevent abuse of the bankruptcy process and purpose. *See, e.g.*, *In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir. 1987), *modified on other grounds*, 836 F.2d 215 (5th Cir. 1988); *Ramirez v. Bracher (In re Ramirez)*, 204 F.3d 595, 600–01 (5th Cir. 2000) (Benavides, J., concurring) (explaining the safeguard against abuse found in § 1325(a)(3)). Whether or not the plan was proposed in good faith is a question of fact for which the debtor bears the burden of proof. *Suggs v. Stanley (In re Stanley)*, 224 F. App'x 343, 346 (5th Cir. 2007). As such, courts are reluctant to define any per se rules applicable to assessing a good faith attempt to propose a plan; however, the Fifth Circuit concluded that invoking chapter 13 relief solely to obtain discharge of a debt that is non-dischargeable in chapter 7 cannot form the basis for the conclusion that the plan was proposed in bad faith, as a matter of law. *In re Chaffin*, 836 F.2d at 216. Moreover, compliance with § 1325(a)(3) is mandatory. *See In re Owsley*, 384 B.R. 739,

750 (Bankr. N.D. Tex. 2008).

With that said, the overwhelming majority of courts, including the Fifth Circuit, have adopted a totality of the circumstances test, where the court uses its discretion on a case-by-case basis. *See In re Stanley*, 224 F. App'x at 346; *Pub. Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983). The Fifth Circuit suggests the following seven factors:

> (1) the reasonableness of the proposed repayment plan, (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code, (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan.

*In re Stanley*, 224 F. App'x at 346 (internal quotations and citation omitted); s*ee Sikes v. Crager (In re Crager)*, 691 F.3d 671, 675 (5th Cir. 2012) (applying the *Stanley* factors to confirmation of the chapter 13 plan). Keeping in mind the facts of the particular case, the amount of weight due each factor depends on the Court's assessment of the debtor's credibility. *See In re Crager*, 691 F.3d at 675 (holding that it was not clearly erroneous for the bankruptcy court to find a plan proposed in good faith when it had the opportunity to judge the debtor's credibility as a witness).

Prior to the enunciation of the factors discussed above, this Court provided the following, more detailed factors as pertinent to its analysis:

> amount of proposed payments, debtor's earning capacity, types of debts sought to be discharged, frequency with which debtor has sought bankruptcy relief, motivation and sincerity of the debtor, debtor's ability to pay, circumstances giving rise to the debts, the presence or absence of objections to the proposed plan, duration of the plan, accuracy of information provided by the debtor, whether the plan is preferential to certain creditors, whether the debts would be dischargeable in Chapter 7, and whether the debtor seeks unfairly to manipulate provisions of the Code.

*In re Vasquez*, 261 B.R. 654, 658 (Bankr. N.D. Tex. 2001). In *Vasquez*, the Court considered a proposed plan modification, but its decision to deny the requested modification was partly based

on the debtors' lack of good faith. *Id*. at 659. Applying § 1325(a)(3), the Court instructed that each factor should be considered, while recognizing that not every case will present facts that support each factor. *Id*. at 658–59. Nonetheless, the Court's discretion to weigh each factor accordingly is encompassed in the totality of the circumstances test.

Finally, there is some debate on whether compliance with § 1325(b) creates a presumption of good faith. As one court held, lawful compliance with this section cannot dispose of the good faith analysis because of the applicable test, that being the totality of the circumstances. *In re Owsley*, 384 B.R. at 750. "If Congress had intended for mathematical compliance with section 1325(b) to be dispositive of good faith under section 1325(a)(3), it would have told [the court] so. Consequently, . . . compliance with the good faith requirement does not begin and end with mathematical adherence to section 1325(b)." *Id*.[2] On the other hand, paying most if not all unsecured debt should, according to one court, raise a presumption that the debtor has proposed the plan with an "intent to restructure [their] debt and satisfy [their] creditors as contemplated by the Code." *In re Reinicke*, 338 B.R. 292, 296 (Bankr. N.D. Tex. 2006). Despite the quasi-presumptuous nature of the *Reinicke* court's finding, it went on to discuss factors relevant to a totality of the circumstances analysis, including the debtor's prepetition conduct and the creditors' motives for objecting to the plan. *Id*. at 296–97.

The trustee alleges that Gonzales has inaccuracies in her sworn schedules of income and expenses, that she has not accurately reported her current and anticipated income nor her realistic expenses. Further, the trustee asserts that Gonzales has misled the Court during its proceedings to confirm her chapter 13 plan, stating that she is "making things up as things go along." To support this position, the trustee points to two developments in Gonzales's testimony, namely

---

[2] The *Owsley* court spoke in terms of an above-median-income debtor; however, the same principle applies to a below-median debtor that meets the requirements of § 1325(b).

6

that she is receiving family support that is not listed on her Schedule I and that she testified previously to be in search of employment, but admitted to not actively seeking employment after all. Mathews, through his counsel, suggests that Gonzales has not communicated honestly with the Court or with her attorney. This claim, apparently, is evidenced by the fact that Gonzales's attorney did not offer to amend the relevant schedules until the hearing here on October 19th. Basically, the allegation is that had debtor's counsel been made aware of Gonzales's income and expenses, he would have amended the schedules in a timely manner.

The Court reviews the testimony and other evidence in accordance with the *Stanley* factors.

***1. The reasonableness of the proposed repayment plan.*** Gonzales testified to receiving income from a variety of sources, including Social Security Disability Income, self-employment income, and rental income. The terms of the plan provide for a conduit mortgage payment. Additionally, as announced at the hearing, Gonzales proposes to pay the real property taxes going forward, an unsecured claim in the amount of $2,500 to Mathews (in connection with the repairs made to the home), prepetition mortgage arrears, a claim made by the state comptroller, insurance on the home, and a Lubbock Central Appraisal District business tax claim. At the time of the hearing, Gonzales had made all payments called for under the plan and acknowledged that those payments would increase minimally in the future. She further testified, in a conclusory fashion, that she is capable of complying with the terms of the plan, including an anticipated increase in payments.

The problem, of course, is that Gonzales's plan is not feasible as proposed. In addition, income from odd jobs is inherently unreliable; so, too, are claims that a relative will help with

7

payments. The Court needs evidence of *regular* income. Nonetheless, assuming feasibility, Gonzales's chapter 13 plan appears generally reasonable.

*2. Whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code.* The tensions between Gonzales and Mathews center on a failed foreclosure, whereby Gonzales was able to reoccupy her home following eviction. During her absence, however, the home was renovated and improved. The value of those improvements was disputed. The parties subsequently agreed to value the improvements at $2,500 and provide Mathews with a $2,500 unsecured claim.

The agreement resolves the contention that Gonzales is abusing the bankruptcy process to receive a windfall for the value of the improvements to her home. Because Mathews, the holder of an unsecured claim, objected to plan confirmation, Gonzales is either required to provide for full repayment of the unsecured claims or commit all of her projected disposable income to payments under the plan for the duration of the plan. § 1325(b)(1); *Hamilton v. Lanning*, 560 U.S. 505, 509–10 (2010). The fact that unsecured creditors are not receiving much, if anything, does not render her plan or petition as having been filed in bad faith. Gonzales filed this bankruptcy for the avowed purpose of keeping her home.

*3. Whether the debtor genuinely intends to effectuate the plan.* At the hearing, Gonzales testified that she was current on all payments under the plan. She was questioned by her counsel regarding the forthcoming increase in payments. Gonzales stated that she is capable of making increased payments and that her sister will help if she falls short.

*4. Whether there is any evidence of misrepresentation, unfair manipulation, or other inequities.* The trustee and Mathews each contend that Gonzales made multiple

misrepresentations to the Court, both in her sworn schedules and in live testimony. It is within the Court's discretion to judge the credibility of the debtor.

Schedules I and J are not accurate. Debtor's counsel stated that new schedules were forthcoming and would include updated amounts related to Gonzales's income and expenses. As is often the case in chapter 13 proceedings, debtors' finances change. But accurate Schedules I and J are essential in a chapter 13 case.[3] And a debtor *must proactively* ensure her schedules are accurate. Constantly amending schedules as questions arise is not acceptable.

Gonzales's live testimony is subject to some speculation. Debtor's counsel asked Gonzales about the income she received from doing contract labor for her sister; proof of this income was presented by receipts.[4] This income was apparently earned by performing maintenance work to a rental house, providing lawn services for the same home, and acting as the property manager. On cross examination, Mathews's counsel inquired how this income could be sustained in the winter months when lawn services are not generally required. Gonzales essentially testified that she babysits for anyone that needs her services and supplements her income by constantly looking for odd-jobs to perform.[5] Given Gonzales's condition, her ability to supplement her income must be questioned.

*5. Whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay.* There is no evidence of fraud on Gonzales's part.

---

[3] At this time, the most recently amended Schedules I and J were filed on October 16, 2017. Doc. No. 57. Schedule J, however, reflects a dependent living in the home with Gonzales. At the October 19th hearing, Gonzales testified that her granddaughter (the listed dependent) no longer resided with her. An amendment to Schedule J, therefore, is necessary to accurately reflect Gonzales's current expenses.

[4] Debtor's counsel did not offer for admission any exhibits during the October 19th hearing.

[5] Further, Gonzales asserts that she cannot perform a job that requires her to work full-time because of her disability and because she is limited in the amount of income she can earn while still receiving Social Security Disability Income.

***6. Whether the plan reflects the debtor's ability to pay.*** Gonzales is currently earning income in the form of self-employment income, Social Security Disability Income, and rental income. She says that she is able to rely on family support if her income for a month is not enough to make the plan payment. She testified that she is actively seeking jobs to ensure her ability to afford her plan payments each month. Neither avowed family assistance nor a constant search for odd jobs is evidence of regular and reliable income.

***7. Whether a creditor has objected to the plan.*** The only objecting creditor is Mathews, who holds a lien and deed of trust against Gonzales's residence. Mathews's objection focuses on the feasibility of the plan and Gonzales's attempt to secure the value of the improvements made to the residence. Given the objections of Mathews and the trustee, Gonzales must either provide for full repayment of unsecured claims or commit all of her disposable income toward plan payments for the duration of the plan. § 1325(b)(1); *Lanning*, 560 U.S. at 509–10. The trustee asserts that he is not able to determine if Gonzales is committing all projected disposable income toward plan payments. According to the trustee, Gonzales is a below-median-income debtor. Her projected disposable income is not subject to the mechanical calculations of the means test. Disposable income, therefore, is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance or support of the debtor . . . , that first becomes payable after the date the petition is filed." § 1325(b)(2). The current Schedules I and J reflect income of $1,827 per month and expenses of $1,087 per month, leaving disposable income of $740.[6] The terms of the current plan propose a payment of $740 per month for 60 months. By these calculations, Gonzales is committing all of her disposable income to plan payments. This analysis is not final, however, because of the need for an

---

[6] Doc. No. 57.

amended Schedule J that reports accurate expenses. Gonzales's proposal vis-à-vis Mathews does not indicate bad faith.

### III.

### The Order

As stated, Gonzales's plan as presented is not feasible and thus cannot be confirmed. To achieve confirmation of a chapter 13 plan, Gonzales *must* accurately and credibly satisfy the disclosure requirements of a chapter 13 debtor and prove that she has regular and reliable income with which to make payments under a chapter 13 plan.

It is, therefore,

ORDERED that confirmation of Gonzales's chapter 13 plan is denied.

### End of Memorandum Opinion and Order ###